FILED
10/28/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 1, 2020

## IN RE AUTUMN D. ET AL.

**Appeal from the Juvenile Court for Sullivan County**
**No. J19336, J19337       J. Klyne Lauderback, Jr., Judge**

———————————————————

### No. E2020-00560-COA-R3-PT

———————————————————

The trial court terminated Father's parental rights on the grounds of abandonment by an incarcerated parent through wanton disregard and failure to manifest an ability and willingness to assume custody of the children. The trial court also found that termination was in the children's best interests. Father appeals. Because there are significant deficiencies in the trial court's order, we vacate and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, joined.

Jordan C. Pennington, Bristol, Virginia, for the appellant, Timothy D.

Herbert H. Slatery, III, Attorney General and Reporter; and Jordan K. Crews, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

### BACKGROUND

On May 22, 2019, the Tennessee Department of Children's Services ("DCS") filed a petition to terminate the parental rights of Kathy D.[1] ("Mother") and Timothy D.

---

[1] In cases involving termination of parental rights, it is this Court's policy to remove the full names of children and other parties to protect the minor children's identities.

("Father" or "Appellant")[2] to Christopher D. and Autumn D. (collectively, "the children").[3] DCS took custody of Christopher on February 5, 2018, after investigating a claim that he had sexually abused Autumn. At that time, the children were living with Mother[4] and Larry A. ("Stepfather").[5] Mother then surrendered her parental rights to Christopher on May 17, 2018. DCS subsequently took custody of Autumn on June 25, 2018, after it received a referral regarding Mother and Stepfather physically abusing and psychologically harming her. According to DCS, Mother asked if she could surrender her parental rights to Autumn in June 2018).[6]

DCS alleged the following grounds for termination with respect to Father: (1) abandonment by incarcerated parent, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(iv), -102(1)(C), -102(1)(E); (2) substantial noncompliance with permanency plans, Tenn. Code Ann. §§ 36-1-113(g)(2), 37-2-403(a)(2);[7] (3) persistent conditions, Tenn. Code Ann. § 36-1-113(g)(3);[8] and (4) failure to manifest an ability and willingness to assume custody or financial responsibility, Tenn. Code Ann. § 36-1-113(g)(14). A bench trial on the petition was held in the trial court on January 16, 2020.

Because Father was incarcerated, he participated in the trial telephonically. Indeed, Father was incarcerated at all times during the events at issue in this case. He was first convicted in Virginia of accommodation sale of oxycodone relating to conduct occurring on October 28, 2014. His total penitentiary sentence was one month; he received a five-year sentence, four years and eleven months of which were suspended. Father was next

---

[2] Inexplicably, in one of the parenting plans created by DCS in this case, a third party, Robert M., is listed as Christopher's "Legal father, Stepfather." Nowhere else in the record is he mentioned, nor are his rights apparently at issue. Father is listed as the father on the children's birth certificates, and the parties appear to agree that he is the biological and legal father of the children. Thus, we will operate under that assumption.

[3] Christopher was born in October 2006 and Autumn was born in July 2005.

[4] It is unclear exactly when the children began living with Mother. It appears the parties agree that the children lived with Father from infancy until at least August 2015. In fact, the State asserts that the children "began living with Mother around August 2015." However, Autumn testified that she went to live with Mother when she was approximately eleven years old. Her eleventh birthday was not until July 2016. In addition, the reasons why and circumstances under which the children began living with Mother are not completely clear. The trial court did not admit all of the evidence on this issue. However, we need not address it here because of the disposition of this case.

[5] Larry A.'s legal status with respect to the children is unclear. The parties refer to him throughout alternatively as Mother's "paramour" and the children's "stepfather." For the sake of consistency, we will refer to him as "Stepfather."

[6] Because Mother surrendered her parental rights to Christopher and the trial court proceeded as to her by default when it terminated her parental rights to Autumn, which she did not appeal, her parental rights are not at issue in this appeal.

[7] The heading for this ground in DCS's petition only mentions Mother, but the paragraphs under the heading proceed to mention Father—so it is unclear if DCS meant to actually allege this ground against Father. Furthermore, in the State's appellate brief, there is no mention of this ground with respect to Father.

[8] DCS voluntarily dismissed this ground during trial.

convicted on four counts of distribution of morphine relating to conduct occurring between June 11 and June 23, 2015, in Virginia, for which his total penitentiary sentence was three years; he received a sentence of forty years, with thirty-seven years suspended. He was also convicted of three counts of sale of morphine relating to conduct occurring on June 24 and 26, 2015, in Tennessee. For those convictions, Father's total incarceration sentence was six years, to run concurrently with his Virginia sentence, and with him being eligible for parole after serving 30% of the sentence. It appears to be undisputed that Father completed his prison sentence in Virginia on September 30, 2019, and was transferred directly to the Tennessee Department of Corrections to serve his remaining time. At the trial on this cause, Father testified that he hoped to be paroled soon, but that without parole he would not be released until 2024. By that time, the oldest child, Autumn, would no longer be a minor.

The trial court entered a final order on March 27, 2020, terminating Father's parental rights on the grounds of abandonment by incarcerated parent through wanton disregard, and failure to manifest an ability and willingness to assume custody of the children. However, the trial court found that DCS did not prove by clear and convincing evidence that Father had abandoned the children by failing to visit, because it was unclear when he was incarcerated and whether he had visited in the four months preceding his incarceration. The court further held that termination was in the children's best interest based on Father's failure to establish or maintain a meaningful relationship with the children and because of the effect that a change in caretakers would have on the children. Father timely appealed.

## ISSUES PRESENTED

In this appeal, Father challenges both the grounds found in support of termination of his parental rights and the trial court's finding that termination is in the children's best interests.

## STANDARD OF REVIEW

Parental rights are "among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016) (collecting cases). Therefore, "parents are constitutionally entitled to fundamentally fair procedures in parental termination proceedings." *Id.* at 511. These procedures include "a heightened standard of proof—clear and convincing evidence," which "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings. The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* at 522 (citations and quotations omitted).

In Tennessee, termination of parental rights is governed by statute, which identifies

"'situations in which [the] state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove by clear and convincing evidence: (1) existence of at least one of the statutory grounds in section 36-1-113(g), and (2) that termination is in the child's best interest. *See In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Carrington H.*, 483 S.W.3d at 523–24 (citations omitted). "The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness." *Id.* at 524 (citation omitted). Any "other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness." *Id.* (citation omitted).

In the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citations omitted). This Court therefore "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citation omitted).

## DISCUSSION

In reviewing a trial court's order terminating parental rights, we ordinarily start our analysis with the grounds for termination that the trial court found. And "in an appeal from an order terminating parental rights," this Court "must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *Carrington H.*, 483 S.W.3d at 525–26 (citation omitted). However, our review is hampered in this case for two reasons. First, the trial court failed to fully analyze one of the grounds upon which it based its ruling, failure to manifest willingness and ability under section 36-1-113(g)(14). Second, the trial court's written order regarding the best interest analysis under section 36-1-113(i) is deficient.

We start our analysis by addressing a common thread between these two problems with the trial court's order: a lack of necessary findings of fact and conclusions of law.

Both Rule 52.01 of the Tennessee Rules of Civil Procedure[9] and section 36-1-113(k) require trial courts to make specific findings of fact and conclusions of law in bench trials on parental rights termination petitions. *See* Tenn. Code Ann. § 36-1-113 ("[In parental rights termination proceedings, t]he court shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing."); Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). We have previously emphasized in the context of parental rights termination cases that "[t]here is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re O.W.*, No. W2019-01127-COA-R3-PT, 2020 WL 97727, at *9 (Tenn. Ct. App. Jan. 9, 2020) (internal quotation marks omitted) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)). We have also "vacated termination orders that did not provide sufficient findings of fact, which violated both Rule 52.01 of the Tennessee Rules of Civil Procedure and section 36-1-113(k)." *In re Antonio J.*, No. M2019-00255-COA-R3-PT, 2019 WL 6312951, at *12 (Tenn. Ct. App. Nov. 25, 2019) (citing *In re Colton B.*, No. M2017-00997-COA-R3-PT, 2017 WL 6550620, at *5 (Tenn. Ct. App. Dec. 22, 2017)) (discussing insufficient findings by a trial court with respect to the best interest analysis). "These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). A failure to make specific findings of fact and conclusions of law requires appellate courts to "remand the case with directions to prepare the required findings of fact and conclusions of law." *See id.* (citing *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec. 23, 2003)).

With that background, we turn to the first part of the trial court's order that is deficient—its analysis of the willingness and ability ground. The statute describes that ground as follows:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14). Thus, this ground contains two components: the

---

[9] Pursuant to Rule 101 of the Tennessee Rules of Juvenile Practice and Procedure, the Tennessee Rules of Civil Procedure apply to termination of parental rights cases pursuant to Tennessee Code Annotated section 36-1-113. Tenn. R. Juv. Prac. Proc. 101(c)(3)(A). Thus, the Tennessee Rules of Civil Procedure apply here.

parent must not only have failed to manifest an ability and willingness to assume custody or financial responsibility of the child, but placing the child in the parent's custody must also pose a risk of substantial harm to the child. *See id.* There is some dispute within this Court over the first component. *Compare **In re Ayden S.***, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018) (holding that the petitioner must prove both an inability and unwillingness to assume custody or financial responsibility of a child), *with **In re Amynn K.***, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *12 (Tenn. Ct. App. June 20, 2018) (holding that the petitioner need only prove that "a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child."); *see also **In re Braelyn S.***, No. E2020-00043-COA-R3-PT, 2020 WL 4200088 (Tenn. Ct. App. July 22, 2020) (holding that the disagreement among Tennessee judges evidenced an ambiguity in the statute and reluctantly concluding that the legislative history behind its enactment supported application of the ***Amynn K.*** rule).

In this case, the trial court parrots the language of the statute in holding that "the State has established . . . that [Father's] parental rights . . . should be terminated pursuant to  . . . a failure to manifest a willingness and ability to assume custody." In justifying this holding, however, the trial court speaks only to Father's ability to assume custody, not to his willingness to assume custody.[10] Furthermore, the State claims in its brief that the trial court terminated Father's parental rights based on his "failure to manifest an ability and willingness to personally assume custody of the children." However, at trial, counsel for DCS conceded that Father possesses the requisite willingness when she stated that "[w]hile the father has a willingness, and it has been testified to today [by Father and DCS] that he wishes to assume custody, at this point in time he is not able to assume custody as he's incarcerated." Therefore, the trial court's precise findings on this ground are unclear. Nevertheless, it appears the trial court at least found that Father had, at the time of trial, failed to manifest an ability to assume custody of the children, which would suffice to meet the necessary criteria in section 36-1-113(g)(14) under the ***Aymnn K.*** interpretation.

The trial court did not, however, make any findings as to the second necessary component of section 36-1-113(g)(14). This Court recently held that such a failure to make findings regarding whether placing children in a parent's custody will pose a risk of substantial harm to them requires us to vacate the trial court's order:

> Although the trial court addressed the first element [of section 36-1-113(g)(14)] by finding that the Father's constant entanglement with the law, as well as his apparent lack of preparedness or familiarity with the Child negated any ability on his part to assume legal or physical custody, it made

---

[10] And neither the trial court nor DCS focuses any analysis on Father's payment of financial support so as to satisfy the other method of proving this prong.

no specific finding as to whether placing the Child in the Father's legal or physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child as required under Tennessee Code Annotated section 36-1-113(g)(14).

The absence of this specific finding is not without consequence. With respect to termination cases, the trial court is specifically directed by the statute to "enter an order that makes specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k). Furthermore, neither the trial court nor this Court may proceed to termination absent clear and convincing evidence of each necessary element of a ground for termination. *In re R.L.M.*, No. E2013-02723-COA-R3-PT, 2015 WL 389635, at *4 (Tenn. Ct. App. Jan. 29, 2015). Because the trial court did not make specific findings regarding each of the elements applicable to the failure to manifest ground, we are compelled to vacate the termination order with respect to this ground for termination as to the Father and remand for the preparation of appropriate findings of facts and conclusions of law as is required by the statute. *See In re Mickeal Z.*, No. E2018-01069-COA-R3-PT, 2019 WL 337038, at *14 (Tenn. Ct. App. Jan. 25, 2019) (vacating termination order as to the Father's rights because of a failure to make proper findings to each element as required under Tennessee Code Annotated section 36-1-113(g)(14)); *In re Brianna B.*, No. M2017-02436-COA-R3-PT, 2018 WL 6719851, at *8 (Tenn. Ct. App. Dec. 19, 2018) (noting that the trial court failed to issue any specific findings of fact concerning the *substantial harm* element of the statute).

*In re Nevaeh B.*, No. E2020-00315-COA-R3-PT, 2020 WL 4920020, at *3 (Tenn. Ct. App. Aug. 20, 2020).

Like the above case, the trial court's order here contains "no specific finding" regarding a risk of substantial harm. Moreover, the only finding that the trial court makes concerning Father's present inability to parent his children relates solely to his incarceration. This court has held, however, that incarceration alone is typically insufficient to meet this prong of section 36-1-113(g)(14). *See In re Ken'bria B.*, No. W2017-01441-COA-R3-PT, 2018 WL 287175, at *10 (Tenn. Ct. App. Jan. 4, 2018) (citation omitted) (quoting *In re E.C.*, No. E2016-02582-COA-R3-PT, 2017 WL 2438574, at *9 (Tenn. Ct. App. June 6, 2017)) ("We are cautious on this ground not to equate Father's incarcerated status directly with the threat of substantial harm. Indeed, this Court has explained: 'We have never held that a parent's mere status as an inmate clearly and convincingly establishes that placing the child in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.'"). Under these circumstances, we must conclude that the trial court's ruling on this ground is deficient and that remand is required. *Nevaeh B.*, 2020 WL 4920020, at *3. Thus, we must vacate the trial court's order on the willingness and ability ground and remand for the trial

court to make the necessary findings of fact and conclusions of law under Rule 52.01 and section 36-1-113(k).

As to our second issue with the trial court's ruling, the trial court did not sufficiently address the nine statutory factors in section 36-1-113(i) when analyzing whether it would be in the children's best interest to remain in Father's custody. "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d 240, 254–55 (Tenn. 2010). The Tennessee Supreme Court has mandated that "[w]hen conducting the best interests analysis, courts *must* consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i)." *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (emphasis added); *see also Antonio J.*, 2019 WL 6312951, at *12 (citing *Gabriella*, 531 S.W.3d at 682) ("[T]he Tennessee Supreme Court has directed courts to consider all relevant [best interest] factors."). This does not mean a trial court should conduct "a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then [make] a determination of whether the sum of the factors tips in favor of or against the parent." *Audrey S.*, 182 S.W.3d at 878. Rather, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.*

Here, the trial court discussed only two of the nine best interest factors in section 36-1-113(i)—failure to establish or maintain a meaningful relationship with the children under section 36-1-113(i)(4), and that a change of caretakers and physical environment is likely to have a detrimental effect on the children's psychological, emotional, and physical well-being under section 36-1-113(i)(5). While we decline to state that a trial court's order is deficient in every case in which the trial court fails to expressly discuss each of the nine factors, we must conclude that addressing only two of the nine factors in this particular case was insufficient. The trial court's analysis violates not only the Tennessee Supreme Court's mandate in *Gabriella*, but also the requirements of Rule 52.01, section 36-1-113(k), and the related cases outlined above.

The trial court's failure to address all of the relevant factors in this case is perplexing because it appears that the trial court only discussed those factors that clearly favored termination in the trial court's eyes. While some of the best interest factors in this case may weigh in favor of termination, some likely do not. For example, there is no evidence in the record that Father has ever "shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the [children]." Tenn. Code Ann. § 36-1-113(i)(6). The trial court also acknowledged it could not determine whether Father visited children in the four months preceding his incarceration, so the factor in section 36-1-113(i)(3), regarding visitation, may not weigh in favor of termination. In fact, there is evidence in the record, corroborated not only by Father's testimony, but by DCS testimony and documentation, that Father wrote letters and sent pictures to the children while he was incarcerated.

Importantly, DCS documentation also repeatedly states throughout the record, "[Mother] and [Stepfather] do not allow Autumn to have any contact with [Father] despite him sending her letters. Reportedly, [Mother] and [Stepfather] will tell Autumn that [Father] does not love her." On the other hand, however, Autumn testified that Father did not send her letters and that Mother did not state that Father did not love her.[11] These disputed issues of fact were never resolved by the trial court. Moreover, the trial court's ruling fails to explain if or how the trial court weighed this competing proof in reaching its best interest conclusion. Other factors were certainly relevant in this case, but were not discussed in any fashion by the trial court. *See* Tenn. Code Ann. §§ 36-1-113(i)(1) & (2) (concerning a parent's adjustment of circumstances following assistance from DCS); (7) (concerning the physical environment of the parent's home, including the use of controlled substances therein); (8) (concerning the mental or emotional status of the parent); (9) (concerning the payment of child support).

In sum, the trial court failed to properly perform the best interest analysis. In the absence of the necessary findings, we cannot conduct appropriate appellate review. *See **In re Zoey L.***, No. E2019-01702-COA-R3-PT, 2020 WL 2950549, at *1 (Tenn. Ct. App. June 3, 2020) (citations omitted) (quoting Tenn. Code Ann. § 36-1-113(k)) (citing Tenn. R. Civ. P. 52.01) ("To enable appellate review, the trial court must make 'specific findings of fact and conclusions of law' when entering an order in a termination of parental rights proceeding."). Therefore, we also vacate and remand the trial court's order with respect to its best interest determination, with instructions to properly consider all relevant best interest factors and detail its findings of fact and conclusions of law.

We recognize that another ground exists on which the trial court based the termination of Father's parental rights—abandonment by an incarcerated parent through wanton disregard. The portion of the statute covering this ground upon which DCS and the trial court rely reads as follows:

> (iv) A parent or guardian is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent or guardian has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action and has:

---

[11] For example, when asked if Mother said anything to her about Father sending her letters and if anyone told her that Father did not love her while she was living with Mother before she entered DCS custody, (the exact timeframe relevant to the question and answer is unclear from the transcript), she answered no. Other portions of her testimony are ambiguous and contradictory. For example, she testified at the January 2020 trial that she last had contact with Father in approximately October 2017, but then said she had not seen him in about five years. She later went on to say that she last saw him in approximately June 2017.

* * *

(c) Has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. . . .

Tenn. Code Ann. § 36-1-102(iv).[12] While the trial court made more specific findings with respect to this ground, its lengthy recitation of those findings is at times contradictory, hard to follow, and inconsistent with the record. For example, the trial court's written order states that Father "apparently didn't show up for sentencing [in Virginia on drug charges] because he was also charged for an offense of failure to appear in May of 2016 for those other charges that happened between in [sic] June of 2015. The Court finds that the father plead guilty to those charges in October of 2017. . . ." In fact, the court records from Virginia state that Father "was found NOT GUILTY to the charge of Failure to Appear." The trial court also does not accurately and comprehensively portray Father's criminal record related to drug charges. For example, the trial court mentions Father's "six count indictment [in Tennessee] for offenses that occurred in maybe June of 2015," but fails to acknowledge, as does the State, that three of those six charges were merged with each other under *Blockburger v. United States*, 284 U.S. 299 (1932), and thus Father obtained only three convictions for sale of morphine.

In the interests of judicial economy, we may have been inclined to parse the record to determine whether clear and convincing evidence existed to support this ground for termination in the typical case. This case, however, simply cannot be resolved in this appeal due to the trial court's failure to make the necessary findings as to best interest. Consequently, even if we were to analyze and ultimately affirm the ground for wanton disregard, a remand would still be necessary. As such, there is little benefit in this Court attempting to parse the trial court's order when the trial court can provide additional guidance as to this ground and the other issues in this case on remand. Under these circumstances, we believe that the best course of action is to also remand this ground to the trial court for the entry of a more thorough order on all of the issues presented in this appeal.

We note, however, that in cases involving children, "'[e]vents and lives have not stood still while this [] dispute has been in the courts.'" *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *9 (Tenn. Ct. App. Oct. 24, 2012) (quoting *Wall v. Wall*, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *26 (Tenn. Ct. App. July 14, 2011)). Even in the termination context, we have therefore held that "when a trial court is directed to reconsider an issue on remand that involves the circumstances of children and their parents, the trial court should endeavor to ascertain and give effect to the

_____

[12] The version of Tenn. Code Ann. § 36-1-102(1)(A)(iv) in effect when DCS filed the termination petition in this case differs from the current version of the statute, but in ways that are immaterial to the disposition of this case.

- 10 -

parties' actual circumstances[.]" ***In re James D.***, No. W2019-00863-COA-R3-PT, 2020 WL 599044, at \*7 (Tenn. Ct. App. Feb. 7, 2020) (internal quotation marks omitted) (quoting ***Kathryne B.F. v. Michael B.***, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at \*7 (Tenn. Ct. App. Mar. 13, 2014) (quoting ***In re C.W.***, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013))). As such, the trial court may "consider the circumstances of the parties and the [c]hildren as they exist as of the date of the hearing on remand[,]" particularly with regard to the children's best interests. ***Id.***

## CONCLUSION

The judgment of the Sullivan County Juvenile Court is vacated, and this cause remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to the Tennessee Department of Children's Services, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 11 -